**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

P.F., et al.,[1]

    Plaintiffs,                               Case No. 3:15CV1923

vs.                                               **ORDER**

Betsy Gordon, et al.,

    Defendants

This is a suit under 28 U.S.C. § 1983, in which the plaintiffs, the parents P.F. (father) and D.F. (mother) of a minor daughter, B.F., allege that the defendants, employees of the Ottawa County, Ohio, Job and Family Services agency (JFS) violated their rights to procedural due process. The gravamen of the complaint is that, without a court order, and over the objections of the plaintiffs, the defendants removed B.F. from the family home in violation of the right of familial companionship, care, control, and custody.

Pending are two motions to exclude expert testimony: defendants' motion to exclude the testimony of plaintiffs' expert, Michael Corey (Doc. 58) and plaintiffs' motion to exclude the testimony of defendants' expert, Judith K. Engelhart. (Doc. 71 (corrected)).

For the reasons that follow, I grant both motions.

### Background

### 1. Removal of B.F.

---

[1] I have *sua sponte* altered the caption to protect the privacy of the plaintiffs and their daughter.

On the afternoon of April 27, 2015, P.F. had taken two foster children (not plaintiffs in this action) to attend a soccer game in which one of the children was playing. Plaintiff D.F. had remained home with B.F.

Shortly thereafter, Ottawa County Deputy Sheriff Matt Gandee came to the home with JFS social service workers defendants Betsy Gordon and Julie Barth. Gordon told D.F. that there was a sexual abuse allegation against P.F.[2]

The parties disputed what happened next.

According to the plaintiffs, defendant Gordon presented D.F. with an "ultimatum:" either P.F. would have to vacate the home pending further investigation or B.F. and the two foster children would be removed and placed in "respite care." Neither caseworker mentioned a less drastic alternative available under Ohio law - namely, creation of an in-home safety plan.

D.F. objected to the children's removal if P.F. were to remain in the home. To be compliant with the caseworkers, she filled out the respite care "paperwork."

As D.F. was packing bags for the children, P.F. arrived home with the foster children. He likewise objected to either having to leave the home or having the authorities remove B.F. and the foster children.

Jeff Hartlage, who was to be the foster parent for B.F. and one of the foster children, had also arrived. He testified P.F. objected to leaving the family home.

Defendants, in contrast, assert that, when presented with the option of removal of B.F. and the two foster children or P.F.'s living elsewhere for the duration, D.F. said she did not want her

---

[2] Plaintiff daughter, B.F., had made the complaint against her father.

2

husband to leave. Thus, the defendants contend, they had obtained either express or implicit consent for B.F.'s removal.

After P.F. and D.F. had retained counsel, their lawyer notified JFS that his clients objected to continued removal of B.F. from the family home. On receiving this notification, JFS filed an abuse complaint with the Ottawa County Juvenile Court seeking an *ex parte* order for temporary emergency shelter care for B.F. On May 15, 2015, the court issued the requested order, which also granted temporary legal custody of B.F. to Ottawa County.

The judge set the case for a Shelter Care hearing on the next day. At the end of the hearing, the parties reached an agreement, whereby, pending a JFS investigation, P.F. would leave the family home and B.F. could return to it.

## 2. Experts' Reports/Testimony

### a. Plaintiffs' Expert Michael Corey

Corey's report asserts, in essence and at some length, that the defendants (who also include a JFS supervisor, Stephanie Kowal) failed to meet an accepted standard of care by, *inter alia*, not offer the less intrusive option of an in-home safety plan. Such plan would have enabled both P.F. and B.F. to remain in the home pending further investigation. Corey opines that removal of B.F. from the family home was wrongful and breached the standard of child welfare caseworker care.

The defendants argue that, even if a breach of a standard of care happened, it could give rise, at worst, to a state-law tort, not to a violation of constitutional due process. Thus, according to the defendants, evidence, such as that which Corey provides, is irrelevant.

In response, plaintiffs contend the report is at least relevant and admissible on the issue of whether it was reasonable for the defendant caseworkers to have understood they had parental consent for the removal of B.F.

In reply, the defendants, rejecting that assertion, point out that Corey's report repeatedly refers expressly and exclusively to the standard of caseworker care, and said nothing about whether it was reasonable for the caseworkers to have understood they had parental consent.

Defendants also contend that Corey's proposed testimony on that issue is also inadmissible.

**b. Defendants' Expert Judith K. Engelhart**

With regard to the issue of parental consent, Engelhart opines that "Based on the actions of [P.F. and D.F.], Ottawa County children welfare workers would have reasonably believed the parents agreed with the voluntary Out of Home Safety Plan . . . ." (Doc. 57, at 9).

Plaintiffs challenge the relevance of this opinion.

Discussion

**1. Ohio Statutory and
Federal Constitutional Framework**

The statutory backdrop to this litigation is the Ohio Juvenile Code, O.R.C. § 2151.01 *et seq.* generally and, in particular, §§ 2151.31(D) and (E). Those sub-sections empower Juvenile Courts to issue emergency *ex parte* orders for removal of endangered children from their home and the prompt setting of a hearing to determine whether continued removal is necessary.

Revised Code § 2151.27(A)(1) is to the same effect: it prescribes the procedure where no temporary emergency care or other order relating to a juvenile's custody has issued. In such

4

circumstance, a complaint alleging abuse, neglect, or dependency shall be filed "before the end of the next day after the day on which the child was taken into custody."

In other words, where a child is taken from its home, as here, without a prior court order, the Revised Code requires prompt filing of a complaint (if there as no complaint prior to removal) and an opportunity for judicial review of the need for continued removal from the home.

On the other hand, parental consent obviates the need for a child welfare agency to follow these statutory mandates, including that requiring a prompt post-removal hearing, in Ohio as elsewhere, "[t]emporary removal of a child can occur in one of two ways. The parents may consent to the removal, . . . or . . . [a Juvenile] Court can order the removal pursuant to a finding that the child is abused or neglected." *Santosky v. Kramer*, 455 U.S. 745, 776 (1982); *see also Jordan v. Murphy,* 145 F. App'x 513, 524 (6th Cir. 2005) (Lawson, D.J., concurring in part and dissenting in part, noting there is no Fourth Amendment violation when parents consent to caseworkers' entry into the home to remove a child).

The State cannot deprive the full enjoyment of a person of a liberty interest embodied in a fundamental constitutional right without providing either limited due process before the deprivation or or prompt, more extensive due process after the deprivation. This is the teaching of *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 n.7 (1985)("An essential principle of due process is that a deprivation . . . be preceded by notice and opportunity for hearing appropriate to the nature of the case," though in "some situations," a "postdeprivation hearing will satisfy due process requirements." (citations omitted)).

As applied in this case, that lesson is that, the State, absent consent, cannot intrude upon, interfere with, or otherwise impair a parent's fundamental liberty interest in custody, control, and

5

care of a child unless exigent circumstances compel, or an *ex parte* emergency temporary custody order authorizes it to do so. *See generally, Kovacic v. Cuyahoga Cty. Dep't. of Children and Family Servs.*, 724 F.3d 687 (6th Cir. 2013); *and Kovacic v. Cuyahoga Cty. Dep't of Children and Family Servs.*, 606 F.3d 301 (6th Cir. 2010). Where removal under those circumstances takes place, the State must promptly provide the due process of judicial review under O.R.C. §§ 2151.27, 2151.31, 2151.314, & 2151.35.

## 2. Standard of Care Opinion

The hinge, albeit vigorously disputed factual question in this case is whether the caseworkers had parental consent to B.F.'s removal from the family home. If removal occurs with parental consent, the above-noted statutory processes did not apply. Withdrawal of consent restores the parents' right to prompt judicial review to determine if continued separation of parent and child is justified.

We deal here with the Federal Constitution, not the mandates of state law - indeed, not even with those mandates that implement due process protections. Whether defendants met those state mandates is irrelevant and immaterial. But that is what Corey's report and his testimony reflective of that report, with its emphasis on alleged breaches of the standard of care, talk about.[3]

Simply put: resolution in this case of the single dispositive factual issue - parental consent - in no way depends on whether the defendants otherwise fulfilled their caseworker duties under Ohio

---

[3] As defendants' reply aptly points out, plaintiffs' opposition to the motion to exclude back peddles from the standard of care-based opinions that permeate Corey's report. Instead, the plaintiffs' opposition to defendants' motion to exclude claims his report and testimony can include his opinion as to whether a reasonable caseworker would have understood she had parental consent to remove B.F. As discussed *infra*, such testimony, even if it actually originated from Corey's report, and not just plaintiffs' arguments, would be inadmissible.

law, including offering the alternative of an in-home safety plan. Even if somehow the defendants had a constitutional duty (which I doubt) to offer such option, there is no basis for finding that the caseworkers knew or should reasonably have known the Federal Constitution gave plaintiffs such right. So, as to that contention, the defendants would enjoy qualified immunity in accordance with the dictates of *Harlow v. Fitzgerald*, 457 U.S. 800 (1983); *see Petty v. Dep't of Human Services*, 2017 WL 1483338 , at *5 (N.D. Okla. 2017). Which makes testimony about the need to offer an in-home safety plan irrelevant.

### 3. Reasonableness of Believing That Parental Consent Had Been Given.

In essence, both parties seek to offer on their on behalf, and exclude the other party's testimony as to the reasonableness of the caseworkers' understanding that they that they had parental consent to remove B.F.

The mutual demand that I allow such testimony collides with settled law that expert testimony is not admissible as to legal conclusions, including whether an official's act was reasonable. *See, e.g., Thomas v. City of Columbus*, 854 F.3d 361, 366–67 (6th Cir. 2017) (citing *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426 (6th Cir. 2006) (holding that the district court did not err in ignoring expert's legal conclusions on objective reasonableness)); *Alvarado v. Oakland County*, 809 F. Supp.2d 680, 691–92 (E.D. Mich. 2011) (court "will be vigilant in precluding [the expert from] expressing opinions that embrace the actual legal conclusion that the jury is asked to decide in this case").

Those cases apply directly here, so I will permit neither side to offer opinion testimony on the reasonableness of the caseworkers' belief that they had parental consent to remove B.F.

**Conclusion**

The opinions expressed in Mr. Corey's report are irrelevant. The reformulation in plaintiffs' opposition to defendants' motion to exclude and those offered by the defendants' expert are an impermissible expression of opinion as to the legal conclusion at issue in this case.

Accordingly, it is hereby

ORDERED THAT the defendants' motion to exclude the testimony of Michael Corey (Doc. 58) and the plaintiffs' motion to exclude the testimony of Judith K. Engelhart (Doc. 71) be, and the same hereby are granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge